UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES GREENE, JENNIFER SHAAL, OFER SHAAL, JAKE STONE, GUY SHOSHAN, EINAT EZRA MICHAELI, and YIFAT SHMILOVICH, on behalf of themselves and all others similarly situated,<br><br>                       Plaintiffs,<br><br>           v.<br><br>KABBALAH CENTRE INTERNATIONAL, INCORPORATED; KABBALAH CENTRES OF THE UNITED STATES, INCORPORATED; KABBALAH CENTRE OF NEW YORK, INCORPORATED; THE KABBALAH CENTRE OF FLORIDA, INC.; KABBALAH CHILDREN'S ACADEMY; KABBALAH ENTERPRISES, INCORPORATED; KAF INVESTMENTS, LLC; 501 N. LA CIENEGA, LLC; SPIRITUALITY FOR KIDS INTERNATIONAL, INC.; and KAREN BERG, YEHUDA BERG, and MICHAEL BERG,<br><br>                    Defendants. | No. 19-cv-4304 (ILG)(SJB) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

**<u>TABLE OF CONTENTS</u>**

<u>**Page**</u>

PRELIMINARY STATEMENT ............................................................................................. 1

RELEVANT FACTS ........................................................................................................... 2

    A.    The Agreements to Arbitrate. ............................................................... 2

            1.    Yifat Shmilovich ......................................................................... 2
            2.    Jake Stone .................................................................................... 3
            3.    Ofer Shaal ................................................................................... 4
            4.    Jennifer Shaal .............................................................................. 5
            5.    Guy Shoshan ............................................................................... 5

    B.    The Filing of the Instant Action Contrary to the Agreements to Arbitrate ............ 6

ARGUMENT ...................................................................................................................... 7

I.    THE ARBITRATION PLAINTIFFS SHOULD BE COMPELLED TO
    ARBITRATE THEIR CLAIMS. ................................................................................ 7

    A.    The Federal Arbitration Act Requires Arbitration of the Arbitration
          Plaintiffs' Claims. ................................................................................ 7

    B.    The Arbitration Plaintiffs Agreed to Arbitrate Pursuant to Valid and
          Enforceable Arbitration Agreements. ...................................................... 9

    C.    The Agreements to Arbitrate Encompass the Claims in the Complaint. .............. 10

    D.    The Arbitration Plaintiffs' Statutory Claims are Arbitrable. ............................... 12

II.    THE ARBITRATION PLAINTIFFS' CLAIMS MUST BE INDIVIDUALLY
    ARBITRATED. ......................................................................................................... 13

III.    ANY DISPUTES REGARDING ARBITRABILITY MUST BE RESOLVED BY
    AN ARBITRATOR, NOT THE COURT .................................................................... 14

IV.    THE COURT SHOULD DISMISS THE ARBITRATION PLAINTIFFS'
    CLAIMS. .................................................................................................................. 16

CONCLUSION ................................................................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abdullayeva v. Attending Homecare Servs. LLC*,
   928 F.3d 218 (2d Cir. 2019)..................................................................................8, 12

*Arrigo v. Blue Fish Commodities, Inc.*,
   704 F. Supp. 2d 299 (S.D.N.Y. 2010), *aff'd*, 408 F. App'x 480 (2d Cir. 2011)......................9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).........................................................................................7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986).........................................................................................8

*Bugtani v. Dish Network LLC*,
   No. 18-cv-5003 (AMD)(RER), 2019 WL 2914158 (E.D.N.Y. July 8, 2019) .................11, 12

*Bynum v. Maplebear Inc.*,
   160 F. Supp. 3d 527 (E.D.N.Y. 2016) ............................................................11, 12

*Camilo v. Uber Techs., Inc.*,
   No. 17-cv-9508 (AKH), 2018 WL 2464507 (S.D.N.Y. May 31, 2018)..............................11

*Cervantes v. Voortman Cookies Ltd.*,
   No. 19-cv-00700-H-BGS, 2019 WL 3413419 (S.D. Cal. July 29, 2019)..............................12

*Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*,
   967 F. Supp. 2d 756 (S.D.N.Y. 2013)...........................................................11

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)...........................................................................................7

*Cont'l Cas. Co. v. Hopeman Bros., Inc.*,
   No. 17-cv-688, 2018 WL 1581987 (S.D.N.Y. Mar. 27, 2018)..............................11

*Contec Corp. v. Remote Sol., Co.*,
   398 F.3d 205 (2d Cir. 2005)...........................................................................14, 16

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
   No. 16-cv-1900, 2017 WL 3524682 (S.D.N.Y. Aug. 15, 2017)..............................9

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)...........................................................................................8

*Emilio v. Sprint Spectrum L.P.*,
  508 F. App'x 3 (2d Cir. 2013) ...............................................................................15

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ...........................................................................7, 12, 13

*Genesco, Inc. v. T. Kakiuchi & Co.*,
  815 F.2d 840 (2d Cir. 1987)...................................................................................11

*Gerena v. Neurological Surgery, P.C.*,
  No. 15-cv-4634 (JMA)(GRB), 2016 WL 3647782 (E.D.N.Y. June 9, 2016) ...................9, 16

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)..................................................................................................12

*Gold v. Deutsche Aktiengesellschaft*,
  365 F.3d 144 (2d Cir. 2004).....................................................................................9

*Googla Home Decor LLC v. Uzkiy*,
  No. 09-cv-1049 (CPS)(RML), 2009 WL 2922845 (E.D.N.Y. Sept. 8, 2009) ........................16

*Henry Schein, Inc., et al. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)..........................................................................................7, 14

*Jones v. Pro Source Servs., Inc.*,
  No. 13-cv-1311-T-30EAJ, 2013 WL 3776689 (M.D. Fla. July 17, 2013) ..............................12

*Knickerbocker Dialysis, Inc. v. TrueBlue, Inc.*,
  601 F. Supp. 2d 502 (E.D.N.Y. 2009) .....................................................................16

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019).............................................................................................13

*Marzano v. Proficio Mortg. Ventures, LLC*,
  942 F. Supp. 2d 781 (N.D. Ill. 2013) .......................................................................12

*Mehler v. Terminix Int'l Co. L.P.*,
  205 F.3d 44 (2d Cir. 2000).......................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).....................................................................................................8

*Murray v. UBS Sec., LLC*,
  No. 12-cv-5914 (KPF), 2014 WL 285093 (S.D.N.Y. Jan. 27, 2014) ....................................15

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016).................................................................................7, 8

*Paduano v. Express Scripts, Inc.*,
  55 F. Supp. 3d 400 (E.D.N.Y. 2014) ..............................................................14, 15

*Polit v. Glob. Foods Int'l Corp.*,
  No. 14-cv-7360 (JPO), 2015 WL 1780161 (S.D.N.Y. Apr. 20, 2015) ...................11

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ............................................................................................14

*Rodriguez-Depena v. Parts Auth., Inc.*,
  877 F.3d 122 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 2634 (2018) ........................12

*Rollins v. Goldman Sachs & Co. LLC*,
  No. 18-cv-7162 (ER), 2019 WL 2754635 (S.D.N.Y. July 2, 2019) ......................11

*Salzano v. Lace Entm't*,
  No. 13-cv-5600 (LGS), 2014 WL 3583195 (S.D.N.Y. July 18, 2014) ....................9

*Schneider v. Kingdom of Thail.*,
  688 F.3d 68 (2d. Cir. 2012) ................................................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
  559 U.S. 662 (2010) ..........................................................................................13

*Thomas v. Pub. Storage, Inc.*,
  957 F. Supp. 2d 496 (S.D.N.Y. 2013) ..................................................................12

*Thompson v. Body Sculpt Int'l, LLC*,
  No. 18-cv-1001 (ARR)(GRB), 2018 WL 3235545 (E.D.N.Y. July 2, 2018) .........13

*Valdez-Mendoza v. Jovani Fashion Ltd.*,
  No. 15-cv-7261, 2017 WL 519230 (E.D.N.Y. Feb. 8, 2017) (Glasser, J.) .........8, 12, 16

*Vargas v. Bay Terrace Plaza LLC*,
  378 F. Supp. 3d 190 (E.D.N.Y. 2019) (Bulsara, M.J.) .........................12, 14, 15, 16

*Washington v. William Morris Endeavor Entm't, LLC*,
  No. 10-cv-9647 (PKC)(JCF), 2011 WL 3251504 (S.D.N.Y. July 20, 2011) .........16

*Wenchun Zheng, Ph.D. v. Gen. Elec. Co.*,
  No. 11-cv-01232 (TJM)(CFH), 2016 WL 3212092 (N.D.N.Y. June 9, 2016) .......16

**STATUTES**

9 U.S.C. § 1 ..........................................................................................................7

9 U.S.C. § 2 ..........................................................................................................7

9 U.S.C. § 3 .......................................................................................................1, 8

9 U.S.C. § 4 .................................................................................................................1, 7, 8

Fair Labor Standards Act .................................................................................6, 10, 11, 12

Federal Arbitration Act ................................................................................................. passim

New York Labor Law ...............................................................................................11, 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6).................................................................................................1

Defendants Kabbalah Centre International, Incorporated; Kabbalah Centres of the United States, Incorporated; Kabbalah Centre of New York, Incorporated; The Kabbalah Centre of Florida, Inc.; Kabbalah Children's Academy; Kabbalah Enterprises, Incorporated; KAF Investments, LLC; 501 N. La Cienega, LLC; and Spirituality For Kids International, Inc. (collectively, "the Organizational Defendants," the "Kabbalah Centre," or "the Centre"); and Karen Berg, Michael Berg and Yehuda Berg (collectively, "the Individual Defendants," and together with the Organizational Defendants, "Defendants") respectfully move this Court for an Order pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4: (i) compelling Plaintiffs Jennifer Shaal, Ofer Shaal, Jake Stone, Guy Shoshan, and Yifat Shmilovich (the "Arbitration Plaintiffs") to arbitrate their claims; and (ii) dismissing this action as to the Arbitration Plaintiffs because all of their claims asserted in the Complaint are subject to arbitration.[1]

## PRELIMINARY STATEMENT

The Arbitration Plaintiffs' claims must be adjudicated in arbitration because they executed agreements containing broad arbitration provisions in which they expressly agreed to arbitrate any disputes arising from the services they provided to the Centre.  Notwithstanding the broad scope of the arbitration provisions in their agreements, the Arbitration Plaintiffs have nonetheless filed the present lawsuit in federal court, alleging claims that are rooted entirely in their association with the Centre.  There is no question that these claims—many of which fail at the pleading stage and otherwise lack merit, as discussed in detail in Defendants' separate motion to dismiss—are subject

---

[1] Defendants have separately moved this Court to dismiss the Complaint in its entirety as to Plaintiffs James Greene and Einat Ezra Michaeli pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that some or all of their claims: (i) fall within the constitutional "ministerial exception," (ii) are not covered by the alleged wage-and-hour laws, (iii) fail to state a claim, (iv) are time-barred, and (v) were released.  Defendants reserve the right to seek dismissal of the Arbitration Plaintiffs on similar (if not identical) grounds should the Court deny the instant motion to compel arbitration in whole or in part.

to mandatory arbitration.  Thus, Defendants respectfully request that the Court compel arbitration of each of the Arbitration Plaintiffs' claims and dismiss this action as to the Arbitration Plaintiffs.

Moreover, although it is clear that the arbitration provisions encompass the claims at issue and are fully enforceable, to the extent there is any outstanding dispute regarding the scope or enforceability of the arbitration provisions, the Court must refer that dispute to an arbitrator.

## RELEVANT FACTS

### A.   THE AGREEMENTS TO ARBITRATE.

The Arbitration Plaintiffs' claims arise out of their association with the Centre.  (Compl. ¶ 1.)  The Kabbalah Centre is a non-profit religious organization that provides spiritual services and disseminates the wisdom and teachings of Kabbalah, an ancient form of sacred spiritual knowledge and practices.  (Compl. ¶ 1.)[2]  Each of the Arbitration Plaintiffs were members of the Centre's Religious Order of Chevre, wherein members are individually and collectively referred to as "Chevre."  (*Id*.)  As detailed below, upon leaving the Centre as members of the Chevre, each of the Arbitration Plaintiffs entered into agreements in which the Centre agreed to pay them valuable consideration in exchange for their agreement to release any claims against the Centre and to arbitrate any disputes with the Centre (the "Agreements").[3]

### 1.   *Yifat Shmilovich*

Yifat (a/k/a Miriam) Shmilovich became a member of the Chevre in 2004.  (Compl. ¶ 22.)  Shmilovich left the Centre as a member of the Chevre in early 2015 and subsequently joined the Centre as a paid employee.  (*Id*.)[4]  In connection with the cessation of her membership in the

---

[2] References to factual allegations in the Complaint are assumed to be true for purposes of this motion only.

[3] Copies of the Agreements are attached as Exhibits A – D to the accompanying Declaration of Elise M. Bloom in Support of Defendants' Motion to Compel Arbitration ("Bloom Decl.").

[4] Shmilovich does not allege that she was paid legally inadequate wages during her time as a paid employee.  (*See* Compl. ¶¶ 3, 22, 41.)

Chevre, Shmilovich entered into a separation agreement with the Centre on or around February 1, 2015 in exchange for valuable consideration[5] (the "Shmilovich Agreement").  (Bloom Decl., Ex. A.)

The Shmilovich Agreement contains a broad arbitration provision, which provides, in pertinent part:

> You agree that any dispute arising out of this agreement or services you have provided to the Kabbalah Centre shall be resolved by binding arbitration under the rules and procedures of the American Arbitration Association, and the findings of the arbitrator shall be binding … .

(*Id*., ¶ 6.)  Shmilovich further agreed that "[b]y signing the below, you acknowledge that you have read and understand the above … ."  (*Id*., ¶ 7.)  Shmilovich executed the Shmilovich Agreement on or around February 1, 2015.  (Bloom Decl., Ex. A.)

### 2.   *Jake Stone*

Jake (a/k/a Benyamin) Stone became a member of the Chevre in 2008.  (Compl. ¶ 19.) Stone left the Centre as a member of the Chevre in 2016.  (*Id*.)  In connection with the cessation of his membership in the Chevre, Stone entered into a separation agreement with the Centre on or around October 12, 2015 in exchange for valuable consideration (the "Stone Agreement").  (Bloom Decl., Ex. B.)

The Stone Agreement contains a broad arbitration provision, which provides, in pertinent part:

> You agree that any dispute arising out of this agreement or services you have provided to the Kabbalah Centre shall be resolved by bind-

---

[5] The sums paid to Plaintiffs as valuable consideration have been redacted in the exhibits filed with the court, (Bloom Decl., Exs. A-D), but the full documents have been made available to Plaintiffs' counsel and if necessary, can also be made available to the Court for *in-camera* review or for filing upon the entry of an appropriate protective order.

> ing arbitration under the rules and procedures of the American Arbitration Association, and the findings of the arbitrator shall be binding … .

(*Id.*, ¶ 6.)  Stone further agreed that "[b]y signing the below, you acknowledge that you have read and understand the above … ."  (*Id.*, ¶ 7.)  Stone executed the Stone Agreement on or around October 12, 2015.  (Bloom Decl., Ex. B.)

### 3.   *Ofer Shaal*

Ofer (a/k/a David) Shaal ("O. Shaal") became a member of the Chevre in 2002.  (Compl. ¶ 18.)  O. Shaal left the Centre as a member of the Chevre in 2015.  (*Id.*)  In connection with the cessation of his membership in the Chevre, O. Shaal entered into a separation agreement with the Centre on or around December 29, 2015 in exchange for valuable consideration (the "Shaal Agreement").  (Bloom Decl., Ex. C.)

The Shaal Agreement contains a broad arbitration provision, which provides, in pertinent part:

> **Dispute Resolution.**  You and the Centre agree that any dispute that may arise from or relate to this agreement, your relationship with, services provided to, or participation in activities of the Centre, shall be resolved by final, binding, and confidential arbitration by a single arbitrator in Miami, Florida under the rules and procedures of Judicial Arbitration and Mediation Services, Inc. ("**JAMS**"), which are available online at https://www.jamsadr.com/rules-comprehensive-arbitration/.  **The parties acknowledge that by agreeing to this arbitration procedure, they waive the right to resolve any such dispute through a trial by jury, judge or administrative proceeding**.

(*Id.*, ¶ 10) (emphasis in original).  O. Shaal further agreed that "[y]ou acknowledge that you have read and understand this agreement and sign it voluntarily."  (*Id.*, ¶ 11.)  O. Shaal executed the Shaal Agreement on or around December 29, 2015.  (Bloom Decl., Ex. C.)

### 4. *Jennifer Shaal*

Jennifer (a/k/a Sarah) Shaal ("J. Shaal"), who is married to O. Shall, became a member of

the Chevre in 2005.  (Compl. ¶ 17.)  J. Shaal left the Centre as a member of the Chevre in 2015.

(*Id*.)  In connection with the cessation of her membership in the Chevre, J. Shaal entered into the

Shaal Agreement with the Centre on or around December 29, 2015 in exchange for valuable con-

sideration.  (Bloom Decl., Ex. C.)

The Shaal Agreement contains a broad arbitration provision, which provides, in pertinent

part:

> **Dispute Resolution.**  You and the Centre agree that any dispute that
> may arise from or relate to this agreement, your relationship with,
> services provided to, or participation in activities of the Centre, shall
> be resolved by final, binding, and confidential arbitration by a single
> arbitrator in Miami, Florida under the rules and procedures of Judi-
> cial Arbitration and Mediation Services, Inc. ("**JAMS**"), which are
> available online at https://www.jamsadr.com/rules-comprehensive-
> arbitration/.  **The parties acknowledge that by agreeing to this
> arbitration procedure, they waive the right to resolve any such
> dispute through a trial by jury, judge or administrative proceed-
> ing**.

(*Id*., ¶ 10) (emphasis in original).  J. Shaal further agreed that "[y]ou acknowledge that you have

read and understand this agreement and sign it voluntarily."  (*Id*., ¶ 11.)  J. Shaal executed the

Shaal Agreement on or around December 29, 2015.  (Bloom Decl., Ex. C.)

### 5. *Guy Shoshan*

Guy Shoshan became a member of the Chevre in 1998.  (Compl. ¶ 20.)  Shoshan left the

Centre as a member of the Chevre in 2018.  (*Id*.)  In connection with the cessation of his member-

ship in the Chevre, Shoshan entered into a separation agreement with the Centre on or around May

18, 2018 in exchange for valuable consideration (the "Shoshan Agreement").  (Bloom Decl., Ex.

D.)

The Shoshan Agreement contains a broad arbitration provision, which provides, in pertinent part:

> [Y]ou and the [Centre] agree that any and all claims, disputes or controversies of any nature whatsoever arising from or regarding the interpretation, performance, negotiation, execution, enforcement or breach of this Agreement shall be resolved by confidential, final and binding arbitration conducted before a single arbitrator with JAMS, Inc. ("JAMS") in the New York, New York area, in accordance with JAMS' then-applicable arbitration rules, which appear at the following link: https://www.jamsadr.com/rules-comprehensive-arbitration/. **The parties acknowledge that by agreeing to this arbitration procedure, they waive the right to resolve any such dispute through a trial by jury, judge or administrative proceeding**.

(*Id*., ¶ 13) (emphasis in original).  Shoshan further agreed that "I acknowledge that I have carefully read this Agreement and understand all of its terms" and that "I further acknowledge that I have voluntarily entered into this Agreement, that I have not relied upon any representation or statement, written or oral, not set forth in this Agreement, and that I have had this Agreement reviewed by my attorney, or have been given the opportunity by the [Centre] to do so."  (*Id*., at "Employee Acknowledgement.")  Shoshan executed the Shoshan Agreement on or around May 18, 2018. (Bloom Decl., Ex. D.)

## B. THE FILING OF THE INSTANT ACTION CONTRARY TO THE AGREEMENTS TO ARBITRATE.

Notwithstanding the Arbitration Plaintiffs' express contractual agreements to arbitrate any claims arising from their service as members of the Chevre, they commenced this action on July 25, 2019.  They assert claims under the Fair Labor Standards Act ("FLSA") and state laws seeking minimum wage and overtime, as well as claims for unjust enrichment and fraudulent inducement, even though all of these claims plainly fall within the scope of the Arbitration Plaintiffs' agreements to arbitrate.  (*See* Compl. ¶¶ 117-273.)

## ARGUMENT

**I.     THE ARBITRATION PLAINTIFFS SHOULD BE COMPELLED TO ARBI-TRATE THEIR CLAIMS.**

The Arbitration Plaintiffs must arbitrate their claims pursuant to the broad arbitration pro-

visions in their Agreements and the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq*., because

they agreed to arbitrate pursuant to valid and enforceable Agreements; the Agreements cover all

claims at issue; and the Arbitration Plaintiffs cannot establish that the legislature intended to fore-

close arbitration of their statutory claims.

### A.     THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION OF THE ARBITRA-TION PLAINTIFFS' CLAIMS.

This motion is governed by Section 4 of the FAA, which provides that "[a] party aggrieved

by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbi-

tration may petition any United States district court . . . for an order directing that such arbitration

proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

Under the FAA, "a written provision in . . . a contract . . . to settle by arbitration a contro-

versy thereafter arising out of such contract . . . shall be *valid, irrevocable, and enforceable*, save

upon grounds as exist at law or in equity for the revocation of any contract."  *See Circuit City

Stores, Inc. v. Adams*, 532 U.S. 105, 111-129 (2001) (quoting 9 U.S.C. § 2) (internal quotation

marks omitted; emphasis added).  The FAA, and the strong federal policy favoring arbitration that

it embodies, "requires courts rigorously to enforce arbitration agreements."  *Epic Sys. Corp. v.

Lewis*, 138 S. Ct. 1612 (2018) (internal quotation and citation omitted); *see also Henry Schein,

Inc., et al. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ("Under the Act, arbitration is a

matter of contract, and courts must enforce arbitration contracts according to their terms."); *AT&T

Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (discussing the "liberal federal policy fa-

voring arbitration" under the FAA); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)

7

("This policy is founded on a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, disputes.") (alteration and citation omitted); *Valdez-Mendoza v. Jovani Fashion Ltd.*, No. 15-cv-7261, 2017 WL 519230, at *2 (E.D.N.Y. Feb. 8, 2017) (Glasser, J.) ("It is well-established that federal public policy strongly favors arbitration.").

The FAA, "[b]y its terms . . . leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); 9 U.S.C. §§ 3, 4. The law is clear that arbitration clauses are to be construed as broadly as possible, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 653 (1986) (citation omitted).

In deciding a motion to compel arbitration, courts consider the following factors through the lens of the strong policy favoring arbitration:  (i) whether the parties have agreed to arbitrate their disputes; (ii) whether the scope of that agreement encompasses the plaintiffs' claims; (iii) if statutory claims are asserted, whether the legislature intended such claims to be non-arbitrable; and (iv) if the court concludes that some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration. *See Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221-22 (2d Cir. 2019). Here, application of these factors clearly requires that the Arbitration Plaintiffs be compelled to arbitrate their claims.

8

**B.    THE ARBITRATION PLAINTIFFS AGREED TO ARBITRATE PURSUANT TO VALID AND ENFORCEABLE ARBITRATION AGREEMENTS.**

Each of the Arbitration Plaintiffs unquestionably entered into a valid and enforceable written contract with the Centre in which they agreed to arbitrate "any dispute" arising from the services they provided to the Centre as members of the Chevre.  (*See* Bloom Decl., Ex. A ¶ 6; Ex. B ¶ 6; Ex. C ¶ 10; Ex. D ¶ 13.)  Moreover, each of the Arbitration Plaintiffs signed their Agreement and acknowledged that they had read and understood its terms, including the mandatory arbitration provision, before signing it.  (*See* Bloom Decl., Ex. A ¶ 7; Ex. B ¶ 7; Ex. C ¶ 11; Ex. D at "Employee Acknowledgement.")  *See also Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (holding that a person "who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them"); *Salzano v. Lace Entm't*, No. 13-cv-5600 (LGS), 2014 WL 3583195, at *2 (S.D.N.Y. July 18, 2014) (holding that signing a similarly phrased arbitration clause to the arbitration provisions in the Agreements here constituted a "clear, explicit and unequivocal agreement to arbitrate") (internal quotations and citation omitted).  Given these facts, there can be no legitimate dispute that each of the Arbitration Plaintiffs knowingly and voluntarily entered into a valid and enforceable agreement to arbitrate their claims.[6]

---

[6] The fact that the Arbitration Plaintiffs bring claims against the Individual Defendants, who were not explicit signatories to the Agreements, does not impact the conclusion that all claims must be arbitrated.  *See Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 303 (S.D.N.Y. 2010), *aff'd*, 408 F. App'x 480 (2d Cir. 2011) (holding that former employee's claims against employer's CEO for overtime compensation were subject to employment agreement's arbitration provision, even though CEO was not party to agreement, where claims were based on CEO's status as employer's employee and agent); *Gerena v. Neurological Surgery, P.C.*, No. 15-cv-4634 (JMA)(GRB), 2016 WL 3647782, at *7 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 15-cv-4634 (JMA)(GRB), 2016 WL 3647866 (E.D.N.Y. July 1, 2016) (granting motion to compel arbitration with individual defendant, the CEO of the corporate defendant).  This is particularly true here where the Arbitration Plaintiffs indiscriminately lumped together the Organizational Defendants and the Individual Defendants as "Defendants" in all of the causes of action asserted in the Complaint.  (Compl. ¶117-273.)  *See Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 16-cv-1900, 2017 WL 3524682, at *7 (S.D.N.Y. Aug. 15, 2017) ("Where a plaintiff treats all defendants as a single unit in his complaint, it further supports estopping that plaintiff from shielding himself from arbitrating with certain defendants") (internal quotation and citation omitted).

## C.   THE AGREEMENTS TO ARBITRATE ENCOMPASS THE CLAIMS IN THE COMPLAINT.

The arbitration clauses in the Agreements, which provide for arbitration of "*any dispute arising out of this agreement or services you have provided to the Kabbalah Centre*," Bloom Decl., Exs. A and B ¶ 6 (Shmilovich and Stone) (emphasis added), or "*any dispute that may arise from or relate to this agreement, your relationship with, services provided to, or participation in activities of the Centre,*" Bloom Decl., Ex. C ¶ 10 (O. Shaal and J. Shaal) (emphasis added), or "*any and all claims, disputes or controversies of any nature whatsoever arising from or regarding the interpretation, performance, negotiation, execution, enforcement or breach of this Agreement*," Bloom Decl., Ex. D ¶ 13 (Shoshan) (emphasis added), are "precisely the kind of broad arbitration clause[s] that justif[y] a presumption of arbitrability." *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (characterizing a similar clause providing for arbitration of "any controversy or claim between [the parties] arising out of or relating to the Agreement" as "classically broad") (citation omitted).

All of the claims asserted in the Complaint fall squarely within the broad scope of the arbitration provision in the Agreements.  Specifically, the Arbitration Plaintiffs allege that:  (i) they were not paid minimum wage and overtime as required by the FLSA and state laws (*see* Compl. ¶¶ 117-256); (ii) the Centre was unjustly enriched as a result (*see* Compl. ¶¶ 257-264); and (iii) they were fraudulently induced to join the Centre as members of the Chevre (*see* Compl. ¶¶ 265-273).  These allegations plainly arise out of and relate to the terms of the Arbitration Plaintiffs' Agreements with the Centre, which address the services they provided to the Centre as members of the Religious Order of Chevre.

Courts addressing arbitration provisions with language similar to the provisions in the Agreements here have consistently held that such broad language evinces the parties' intent to

arbitrate an array of disputes, including claims arising under employment statutes, such as the FLSA and state law, as well as unjust enrichment and fraudulent inducement claims. *See, e.g.*, *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987) (upholding arbitration clauses which generally referred to "[a]ll claims and disputes of whatever nature arising under this contract" and "[a]ny controversy arising out of or relating to this contract"); *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 541 (E.D.N.Y. 2016) (holding that FLSA and New York Labor Law claims clearly "ar[ose] out of" and "relate[] to" the services performed by plaintiff and fell within the scope of the broad arbitration clause); *Cont'l Cas. Co. v. Hopeman Bros., Inc.*, No. 17-cv-688, 2018 WL 1581987, at *2 (S.D.N.Y. Mar. 27, 2018) (holding that agreement covering "any disputed issues" is covered in broad scope of arbitration clause); *Polit v. Glob. Foods Int'l Corp.*, No. 14-cv-7360 (JPO), 2015 WL 1780161, at *3 (S.D.N.Y. Apr. 20, 2015) (characterizing clause providing for arbitration of "[a]ny claim or controversy that arises out of or relates to [the employment agreement], or breach of it" as a "quintessential broad arbitration clause"); *Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 764 (S.D.N.Y. 2013) (holding that where an arbitration clause includes "any and all disputes," it is broad enough to cover all questions or disputes arising thereunder); *Rollins v. Goldman Sachs & Co. LLC*, No. 18-cv-7162 (ER), 2019 WL 2754635, at *7 (S.D.N.Y. July 2, 2019) (compelling arbitration of fraudulent inducement claim under broad arbitration provision); *Camilo v. Uber Techs., Inc.*, No. 17-cv-9508 (AKH), 2018 WL 2464507, at *1 (S.D.N.Y. May 31, 2018) (compelling arbitration of unjust enrichment claim under broad arbitration provision).

Moreover, the fact that the arbitration provisions do not explicitly refer to the specific statutory and common law claims asserted in the Complaint is irrelevant. *See Bugtani v. Dish Network*

11

*LLC*, No. 18-cv-5003 (AMD)(RER), 2019 WL 2914158, at *4 (E.D.N.Y. July 8, 2019) ("[A]rbitration clauses may cover statutory claims even if the clause at issue does not mention the specific statutes or statutes in general.") (citation omitted); *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 497-500 (S.D.N.Y. 2013) (same).  As a result, all of Arbitration Plaintiffs' claims fall within the scope of their Agreements to arbitrate.

### D.    THE ARBITRATION PLAINTIFFS' STATUTORY CLAIMS ARE ARBITRABLE.

A final factor courts consider when deciding a motion to compel arbitration in the context of statutory claims is whether the statutory language or legislative history evinces the legislature's intent to foreclose arbitration of those claims.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Valdez-Mendoza*, 2017 WL 519230, at *3 (Glasser, J.).  Under such circumstances, it is the party opposing the motion to compel arbitration that has the burden to establish the requisite legislative intent that the claims are non-arbitrable.  *Gilmer*, 500 U.S. at 26.

The Arbitration Plaintiffs cannot meet this burden here.  Courts, including this one, have consistently held that the FLSA claims asserted in the Complaint are arbitrable.  *See, e.g., Epic Sys. Corp*, 138 S. Ct. at 1632; *Abdullayeva*, 928 F.3d at 223; *Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 123 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 2634 (2018); *Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 198 (E.D.N.Y. 2019) (Bulsara, M.J.); *Valdez-Mendoza*, 2017 WL 519230, at *3 (Glasser, J.); *Bynum*, 2016 WL 5373643, at *10-12.  Likewise, district courts have routinely compelled arbitration of claims alleged under the state statutes at issue here.[7]

---

[7] *See, e.g.*, *Valdez-Mendoza*, 2017 WL 519230, at *3 (Glasser, J.) (New York Labor Law); *Cervantes v. Voortman Cookies Ltd.*, No. 19-cv-00700-H-BGS, 2019 WL 3413419, at *5 (S.D. Cal. July 29, 2019) (California Labor Code); *Jones v. Pro Source Servs., Inc.*, No. 13-cv-1311-T-30EAJ, 2013 WL 3776689, at *3 (M.D. Fla. July 17, 2013) (Florida Constitution); *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 789 (N.D. Ill. 2013) (Illinois Minimum Wage Law).

Accordingly, the Court should grant Defendants' motion to compel arbitration because (i) the Arbitration Plaintiffs each have a valid and enforceable agreement to arbitrate disputes arising out of or relating to their Agreements or the services they provided as members of the Religious Order of Chevre; (ii) the scope of the parties' "broad" arbitration clauses encompasses all of the claims pled in the Complaint; and (iii) the Arbitration Plaintiffs' statutory claims are arbitrable.

## II.   THE ARBITRATION PLAINTIFFS' CLAIMS MUST BE INDIVIDUALLY ARBITRATED.

Although the Arbitration Plaintiffs have commenced this action as a putative class and collective action, their claims must be compelled to arbitration on an individualized basis.  In *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), the Supreme Court held that a court may not compel classwide arbitration when an arbitration agreement is silent on the availability of class arbitration.  *Id*., at 684.  And recently in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), the Supreme Court ruled that courts cannot infer consent to participate in class arbitration even where an agreement is ambiguous as to such arbitration.  Rather, there must be an affirmative contractual basis for concluding that the party agreed to arbitrate on a classwide basis. *Id*., at 1419; *see also Thompson v. Body Sculpt Int'l, LLC*, No. 18-cv-1001 (ARR)(GRB), 2018 WL 3235545, at *7 (E.D.N.Y. July 2, 2018) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.") (citation omitted); *accord Epic Systems Corp.*, 138 S. Ct. at 1623.

Because the arbitration provisions in the Agreements do not affirmatively provide for class arbitration, the Arbitration Plaintiffs must arbitrate their claims individually, and not as part of a class or collective, and their class and collective allegations should be dismissed.

13

### III.   ANY DISPUTES REGARDING ARBITRABILITY MUST BE RESOLVED BY AN ARBITRATOR, NOT THE COURT.

Although it is clear that the arbitration provisions encompass all of the claims at issue and are fully enforceable, to the extent there is any outstanding dispute regarding the scope or enforceability of the Agreements, the Court must refer that dispute to an arbitrator.  Under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,'" *Henry Schein*, 139 S. Ct. at 529.  As the Supreme Court recently confirmed, "courts must enforce arbitration contracts according to their terms[,]" *id*., and where the parties' contract delegates issues to the arbitrators, "the courts must respect the parties' decision as embodied in the contract[,]" *id*. at 531.  *See also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (enforcing delegation provision and "leaving any challenge to the validity of the Agreement as a whole for the arbitrator").

Moreover, where the parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Vargas*, 378 F. Supp. 3d at 195 (quoting *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005)); *see also Schneider v. Kingdom of Thail.*, 688 F.3d 68 (2d. Cir. 2012) (citing *Contec* and confirming that incorporation of arbitral forum's rules, which provide that the arbitrator shall determine issues of arbitrability, effectively delegates the decision making authority regarding the existence or validity of an arbitration clause to the arbitrator); *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 423 (E.D.N.Y. 2014) ("Where the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules … that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided by the arbitrator.") (quotations and alterations omitted).

14

Here, the Agreements entered into by Shmilovich and Stone provide that arbitration shall be administered under the rules and procedures of the American Arbitration Association ("AAA"). (*See* Bloom Decl., Ex. A ¶ 6; Ex. B ¶ 6.)  Similarly, the Agreements entered into by O. Shaal, J. Shaal and Shoshan provide that arbitration shall be administered under the rules and procedures of Judicial Arbitration and Mediation Services, Inc. ("JAMS").  (*See* Bloom Decl., Ex. C ¶ 10; Ex. D ¶ 13.)  Both the AAA and JAMS rules delegate any issues pertaining to the scope or enforceability of the arbitration agreement to the arbitrator.  *See* AAA Rule 6(a);[8] JAMS Rule 11(b).[9]  Accordingly, courts have concluded that the incorporation of the AAA or JAMS rules into an arbitration agreement evinces the parties' intent to arbitrate the question of arbitrability.  *See, e.g.*, *Vargas*, 378 F. Supp. at 197 (E.D.N.Y. 2019) (Bulsara, M.J.) (AAA rules); *Paduano*, 55 F. Supp. 3d at 423 (AAA rules); *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013) (JAMS rules); *Murray v. UBS Sec., LLC*, No. 12-cv-5914 (KPF), 2014 WL 285093, at *14 (S.D.N.Y. Jan. 27, 2014) (JAMS rules).

By explicitly incorporating the AAA and JAMS rules—which both provide for the arbitrator to decide questions of arbitrability—the Arbitration Plaintiffs have agreed to delegate any disputes regarding arbitrability to the arbitrators appointed by the AAA or JAMS.  Therefore, although the nature of the claims and plain language of the arbitration provisions indisputably require

---

[8] Available at https://www.adr.org/sites/default/files/EmploymentRules_Web2119.pdf ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.").

[9] Available at https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11 ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.").

that this case be arbitrated, to the extent there is any outstanding issue regarding arbitrability, that issue should also be resolved in the arbitral forum rather than before the Court.[10]

## IV.   THE COURT SHOULD DISMISS THE ARBITRATION PLAINTIFFS' CLAIMS.

Because all of the Arbitration Plaintiffs' claims in the Complaint fall within the scope of the arbitration provisions in their Agreements, this Court should have no further role in this matter as to their claims, beyond deciding the instant motion.  As noted in many decisions, there is simply no useful purpose in staying—as opposed to dismissing—when all of the claims asserted are subject to arbitration.  *See Valdez-Mendoza*, 2017 WL 519230, at *4 (Glasser, J.) (compelling arbitration and dismissing, rather than staying, the action under the Court's "inherent authority to manage [its] docket"); *Vargas*, 378 F. Supp. at 198 n.11 (Bulsara, M.J.) ("Courts have discretion to dismiss—rather than stay—an action when all of the issues in it must be arbitrated.") (citation omitted); *Wenchun Zheng, Ph.D. v. Gen. Elec. Co.*, No. 11-cv-01232 (TJM)(CFH), 2016 WL 3212092, at *4 (N.D.N.Y. June 9, 2016) ("Because all claims pled in this action are referred to arbitration, the action in this Court is dismissed."); *Knickerbocker Dialysis, Inc. v. TrueBlue, Inc.*, 601 F. Supp. 2d 502, 505 (E.D.N.Y. 2009) ("In light of the fact that TrueBlue's lone third-party claim is subject to arbitration, no useful purpose would be served by granting a stay and thus TrueBlue's third-party complaint against AUL and REM is dismissed in favor of arbitration."); *Googla Home Decor LLC v. Uzkiy*, No. 09-cv-1049 (CPS)(RML), 2009 WL 2922845, at *6 (E.D.N.Y. Sept. 8, 2009)

---

[10] Similarly, to the extent that there is any question as to whether the Arbitration Plaintiffs must arbitrate their claims against the Individual Defendants, this issue too must be decided by an arbitrator, not a Court.  *See Contec*, 398 F.3d at 209-11 (holding that "a non-signatory can compel a signatory to arbitrate under an agreement where the question of arbitrability is itself subject to arbitration."); *Gerena*, 2016 WL 3647782 at *6 ("Here, Dr. Brisman, a non-signatory, can at a minimum compel plaintiff, a signatory, to arbitrate under the Employment Agreement on the question of arbitrability."); *Washington v. William Morris Endeavor Entm't, LLC*, No. 10-cv-9647 (PKC)(JCF), 2011 WL 3251504, at *8 (S.D.N.Y. July 20, 2011) ("I need not reach the issue of whether plaintiff is estopped from avoiding arbitration with the [non-signatory] Individual Defendants because, pursuant to the Delegation Provision, this is a matter for the arbitrator.").

("[B]ecause I conclude that all of plaintiffs' claims are subject to arbitration under the terms of the Operating Agreement, I dismiss plaintiffs' complaint in its entirety.").

## CONCLUSION

For the foregoing reasons, Defendants are entitled to an Order compelling the Arbitration Plaintiffs to arbitrate their claims, dismissing the Complaint as to them, and granting all other relief that the Court may deem just and proper.

Dated:  New York, New York
       September 23, 2019

PROSKAUER ROSE LLP

*/s/ Elise M. Bloom*_____
Elise M. Bloom
Steven D. Hurd
Pinchos N. Goldberg
Samantha R. Manelin

Eleven Times Square
New York, New York 10036
(T)  212.969.3000
(F)  212.969.2900
ebloom@proskauer.com
shurd@proskauer.com
pgoldberg@proskauer.com
smanelin@proskauer.com

*Attorneys for Defendants Kabbalah Centre International, Incorporated; Kabbalah Centres of the United States, Incorporated; Kabbalah Centre of New York, Incorporated; The Kabbalah Centre of Florida, Inc.; Kabbalah Children's Academy; Kabbalah Enterprises, Incorporated; KAF Investments, LLC; 501 N. La Cienega, LLC; and Spirituality for Kids International, Inc.*

SHAPIRO ARATO BACH LLP

*/s/ Jonathan P. Bach*_____
Jonathan P. Bach

500 Fifth Avenue, 40th Floor
New York, New York 10110
(T)  212.257.4880
(F)  212.202.6417
jbach@shapiroarato.com

*Attorneys for Defendants Karen Berg and Michael Berg*

LAW OFFICE OF JOHN D. CLINE


*/s/ John D. Cline*
John D. Cline

One Embarcadero Center, Suite 500
San Francisco, California 94111
(T)  415.662.2260
(F)  415.662.2263
cline@johndclinelaw.com

*Attorneys for Defendant*
*Yehuda Berg*